## GWYER vs. KENNEDY.

1. Upon affirmance by this court, the plaintiff has his option either to enter up judgment against the principal and sureties on the *supersedeas* bond, as in cases of appeal, or to cause execution to issue against them without, as in cases of bonds to stay execution.
2. The security could at any time have caused execution to be issued, paid it off, taken control of it, and collected the amount due from the parties liable thereon, in the same manner as on an execution based on a stay-bond.

Judgments. Executions. Principal and surety. Bonds. *Supersedeas.* Practice in the Superior Court. Before Judge HILLYER. Fulton Superior Court. April Term, 1878.

Reported in the decision.

JNO. T. GLENN, for plaintiff in error, cited as follows: Quashing *fi. fa.* error, acts 1870, p. 416; Code, §§4263, 3662, 4287; 42 *Ga.*, 238; 45 *Ib.*, 81. Illegality demurrable, Code, §2154; 3 *Ga.*, 248; 33 *Ib.*, 173–184; 55 *Ib.*, 374; DeColyar on Guar., 408, 410–414.

D. F. & W. R. HAMMOND, for defendant, cited as follows: Judgment must be entered, act 1870, p. 416; Code, §§3661, 3662, 3571; contrast date of 42 *Ga.*, 238; 45 *Ib.*, 81; 40 *Ib.*, 127. Surety discharged, 37 *Ga.*, 428; 3 *Ib.*, 412; Code, §2154; 52 *Ga.*, 555.

WARNER, Chief Justice.

Robert C. Gwyer sued the Atlanta Mining and Rolling Mill Company in Fulton superior court, and obtained judgment. The company carried it to the supreme court, giving a *supersedeas* bond with John D. Gray and Allen Kennedy as sureties. The judgment was affirmed by the supreme court, and this affirmance was made the judgment of the superior court on May 7th, 1873. On 23d November, 1877, execution was issued against the company as

principal, and Gray and Kennedy as sureties, and on December 8, 1877, was levied on property of Kennedy. No judgment was entered on the *supersedeas* bond. On December 22d, 1877, Kennedy filed an affidavit of illegality to the execution, on the grounds—

1. Because no judgment had been entered on the bond.

2. Because the failure to enter judgment at the April term, 1873, or any subsequent term, increased his risk as surety, and discharged him. The judgment would have been a lien upon the property of Gray, his co-surety, and he could have paid it off and controlled it.

3. Because when the judgment should have been entered, to-wit: May 7, 1873, Gray was solvent, and could have been coerced to pay his half of the judgment, and he has since become insolvent, which damages and discharges Kennedy.

4. Because the failure to enter judgment from May 7th, 1873, to November 23d, 1877, four years six months and sixteen days, increased his risk, and damaged and discharged him in this: if the *fi. fa.* had been issued at the time required by law against him and Gray; he could have paid it off and controlled it against Gray, who was solvent on May 7th, 1873, but has since become insolvent, and he could not collect it out of him, neither all nor any part.

5. Because when the judgment was rendered and affirmed, and for a considerable time subsequent thereto, the Scofield Rolling Mill Company, the successor of the Atlanta Mining and Rolling Mill Company, was solvent and able to pay said judgment, but has since become insolvent. It was liable for said judgment, and could have been forced to pay it. The failure to take steps to collect the judgment, and to issue execution, or to enter judgment on bond, etc., damaged and discharged him.

Counsel for plaintiff in *fi. fa.* moved to dismiss the affidavit as insufficient in law. Counsel for Kennedy moved to quash the *fi. fa.* because no judgment had been entered on the *supersedeas* bond.

The court refused to dismiss the affidavit, but passed an

order quashing the *fi. fa.*, and sustaining the illegality as to the first ground, whereupon plaintiff in *fi. fa.* excepted.

1. The main controlling question in this case, is whether the execution which issued in favor of the plaintiff against the Atlanta Mining and Rolling Mill Company as principal, and John D. Gray and Allen Kennedy as securities, on a *supersedeas* bond in a case carried up to this court, in which the judgment of the court below was affirmed, was a valid and legal execution as against the securities without a formal judgment having been entered up against them on said *supersedeas* bond. The solution of that question involves the construction of the act of the general assembly of the 28th of October, 1870, which declares that when the judgment of the court below shall be affirmed in the supreme court "it shall and may be lawful for the party gaining said case in the supreme court to enter up judgment against the principal and his securities on said bond, in the same way and manner that judgment is entered up on appeal bonds, or bonds given for the stay of execution." This act should be construed in view of the then existing law in relation to entering judgment on appeal bonds, or bonds given for the stay of execution. By the 3571st section of the Code it is declared, that in all cases of appeal, where security has been given, the plaintiff or his attorney may enter up judgment against the principal and surety jointly and severally, etc. But in cases in which bond and security has been given for the stay of an execution for sixty days, as provided by the 3661st section, and after the expiration of that time, if the judgment is not paid, execution shall then issue against the party and his security without further proceedings thereon. Code, §3662. Thus it will be perceived that when bond and security has been given for the stay of an execution (which is analagous to a *supersedeas* bond) no judgment on the bond is required to authorize an execution to issue against the party obtaining the stay of execution and his security, but that the execution shall issue against such party and his security without further proceedings thereon. The true

intent and meaning of the act of 1870 was to declare that the party gaining his case in the supreme court might, if he thought proper to do so, enter up judgment against the principal and his securities on the *supersedeas* bond in the same way and manner that judgment is entered up on appeal bonds, or he might proceed on the bond as on bonds given for the stay of execution ; that either mode of proceeding should be lawful and binding; and such in effect was the ruling of this court in *Munroe vs. Dumas*, 42 *Ga.*, 238; and in *Young vs. Wise*, 45 *Ga.*, 81. The order, therefore, quashing the plaintiff's *fi. fa.* was error.

2. It necessarily follows from the view that we have taken of the plaintiff's *fi. fa.*, which issued on the *supersedeas* bond for the eventual condemnation money in the cause, that the court erred in overruling the plaintiff's motion to dismiss the defendant's affidavit of illegality. The defendant, as security, could at any time have caused the execution to be issued, and could have paid it off, taken control of it, and enforced its collection out of the property of the parties who were liable for its payment, all the parties to the execution being liable for the payment thereof, in the same manner as on an execution issued on a bond given for the stay of an execution.

Let the judgment of the court below be reversed.